Attorney Grievance Commission of Maryland v. Vaughn Miles Mungin, Misc. Docket AG No. 88, September Term, 2012

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION –** Court of Appeals indefinitely suspended from practice of law in Maryland with right to apply for reinstatement after six months lawyer who: (1) negligently mishandled attorney trust account in connection with nine separate client matters; (2) withdrew cash from attorney trust account on three separate occasions; and (3) failed to properly account for and disburse settlement funds in prompt fashion. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.15(a) and 1.15(d) (Safekeeping Property), 8.4(d) (Conduct That Is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC), Maryland Rule 16-609(a)-(c) (Prohibited Transactions), and Md. Code Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol.) § 10-306 (Trust Money Restrictions).

Circuit Court for Prince George's County
Case No. CAE13-03396

Argued: June 4, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 88

September Term, 2012
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

VAUGHN MILES MUNGIN
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Watts, J.
Harrell and Battaglia, JJ., concur.
_____

Filed: July 18, 2014

This attorney discipline proceeding concerns a Maryland lawyer who: (1) negligently mishandled his attorney trust account in connection with nine separate client matters; (2) withdrew cash from his attorney trust account on three separate occasions; and (3) failed to properly account for and disburse settlement funds in a prompt fashion.

Vaughn Miles Mungin ("Mungin"), Respondent, a member of the Bar of Maryland, was retained by various clients in personal injury cases, all of which were settled pursuant to agreements. On March 22, 2011, Capital One, N.A. ("Capital One"), the holder of Mungin's attorney trust account, notified the Attorney Grievance Commission of Maryland ("the Commission"), Petitioner, that a check in the amount of $2,000 had been presented without sufficient funds present in the attorney trust account, resulting in an overdraft in the amount of $1,548.84.

On February 26, 2013, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Mungin, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.15 (Safekeeping Property), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC), Maryland Rule 16-607 (Commingling of Funds), Maryland Rule 16-609 (Prohibited Transactions), and Md. Code Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol.) ("BOP") § 10-306 (Trust Money Restrictions).

On March 12, 2013, we designated the Honorable Crystal Dixon Mittelstaedt ("the hearing judge") of the Circuit Court for Prince George's County to hear this attorney

discipline proceeding. On July 8 and 25, 2013, the hearing judge conducted a hearing. On October 18, 2013, the hearing judge filed in this Court findings of fact and conclusions of law, concluding that Mungin had violated MLRPC 1.1, 1.15(a), 1.15(d), 8.4(d), and 8.4(a), Maryland Rule 16-609(a)-(c), and BOP § 10-306, but had not violated MLRPC 8.4(b) or MLRPC 8.4(c).[1]

On June 4, 2014, we heard oral argument. For the below reasons, we indefinitely suspend Mungin from the practice of law in Maryland with the right to apply for reinstatement after six months.

## BACKGROUND

In her opinion, the hearing judge found the following facts, which we summarize.

On March 7, 2005, this Court admitted Mungin to the Bar of Maryland. In 2006, Mungin became a solo practitioner and opened an office in Greenbelt, Maryland. On or about March 21, 2011, Mungin presented a check in the amount of $2,000, drawn on his attorney trust account, for payment to Capital One, the holder of his attorney trust account. Presentment of the check caused an overdraft of the attorney trust account in the amount of $1,548.84.

On or about April 7, 2011, Mungin received from Bar Counsel a certified letter requesting an explanation for the overdraft. On August 30, 2011, Bar Counsel subpoenaed Mungin's attorney trust account records for the period between May 1, 2009,

---

[1]At the hearing, Bar Counsel withdrew the charges that Mungin violated MLRPC 1.15(b), (c), and (e), and Maryland Rule 16-607. Accordingly, the hearing judge did not determine whether Mungin violated those MLRPC or Maryland Rule 16-607.

and June 30, 2011. The records revealed that, in May 2010, Mungin made three cash withdrawals from his attorney trust account totaling $500: one withdrawal of $100 in cash and two withdrawals of $200 in cash. Bar Counsel discovered that Mungin had mishandled his attorney trust account in connection with nine separate client matters.

*Trina Coore Matter*

On May 11, 2009, Mungin deposited into his attorney trust account a check in the amount of $8,000 on behalf of his client, Trina Coore ("Coore"), received pursuant to a settlement in Coore's personal injury case. Of the settlement funds, $1,743.83 was to be paid to Coore's medical providers, and $2,665 comprised Mungin's attorney's fees. Specifically, $1,146 was to be paid to Physiotherapy Associates, $561.09 was to be paid to Doctor's Community Hospital, and $36.74 was to be paid to Doctor's Community Hospital/ER Division. On May 13, 2009, Mungin transferred $5,000 in funds from his attorney trust account to his operating account. On May 20, 2009, Mungin issued to Coore a check in the amount of $3,219.90, drawn on Mungin's attorney trust account.

In June 2009, Mungin failed to maintain $1,743.83 in the attorney trust account for the outstanding balances owed to Coore's medical providers. On June 9, 2009, Mungin's attorney trust account balance fell to $565. On June 24, 2009, Mungin was out of trust[2] in the Coore matter, and Mungin's attorney trust account balance fell to $28.75.

On July 7, 2009, Mungin issued a second check to Coore in the amount of $451.97, drawn on Mungin's attorney trust account. On the same day, Coore and

_____

[2]Being "out of trust" means lacking sufficient funds in an attorney trust account for payment to clients and/or third parties.

Mungin signed Coore's settlement report, which stated: "I hereby approve the entire settlement and distribution made herein and assume full responsibility for all bills incurred by me in connection with this accident not listed above[.]" (Capitalization omitted). Coore's settlement report also stated: "Amended Settlement because of Doctor's Community Hospital partial payment bill." The settlement report listed the partial payment to Doctor's Community Hospital as $109.12.

On July 14, 2009, Mungin issued checks to Coore's medical providers on Coore's behalf in the following amounts: $1,146 to Physiotherapy Associates; $109.12 to Doctor's Community Hospital; and $36.74 to Doctor's Community Hospital/ER Division. The check issued to Doctor's Community Hospital on Coore's behalf was mistakenly issued in the amount of $109.12, instead of $561.09. Mungin did not pay the remaining balance of $451.97 owed to Doctor's Community Hospital; and the second check to Coore on July 7, 2009, in the amount of $451.97, was issued in error and should have been issued to Doctor's Community Hospital instead.

*Bruce Joyner Matter*

On June 29, 2009, Mungin deposited into his attorney trust account a check in the amount of $7,200 on behalf of his client, Bruce Joyner ("Joyner"), received pursuant to a settlement in Joyner's personal injury case. Of the settlement funds, $4,678.32 was to be paid to Joyner's medical providers, and $2,258.68 comprised Mungin's attorney's fees. Specifically, $142.32 was to be paid to Laurel Regional Hospital Emergency Room, $299 was to be paid to Laurel Regional Hospital Doctors Visit, and $4,237 was to be paid to New Carrollton Therapy Center. On June 29, 2009, Joyner and Mungin signed Joyner's

- 4 -

settlement report, which stated: "I hereby approve the entire settlement and distribution made herein and assume full responsibility for all bills incurred by me in connection with this accident not listed above." (Capitalization omitted). Joyner's settlement report listed distributions to the three medical providers, even though the liens were not satisfied until February 2010.

On July 6, 2009, Mungin issued to Joyner a check in the amount of $3,500, drawn on his attorney trust account. On October 22, 2009, Mungin issued to Joyner a second check in the amount of $298 as reimbursement of funds that Joyner had paid to an emergency room.

Between June 29, 2009, and December 11, 2009, Mungin transferred funds from his attorney trust account to his operating account. On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92. Mungin was out of trust in the Joyner matter. On February 16, 2010, Mungin issued a check to New Carrollton Therapy Center on Joyner's behalf in the amount of $1,000, and issued a second check to Laurel Regional Hospital on Joyner's behalf in the amount of $139.47. After receiving the settlement funds in the Joyner matter on June 29, 2009, Mungin paid himself $64,200 in attorney's fees,[3] but failed to timely satisfy the liens owed to Joyner's medical providers.

---

[3]The hearing judge did not explain how she calculated this figure. From our review of the record, it appears that the figure is approximately the amount that Mungin paid himself in attorney's fees between June 29, 2009, and February 16, 2010.

*Waikia Williams Matter*

On July 21, 2009, Mungin deposited into his attorney trust account a check in the amount of $8,700 on behalf of his client, Waikia Williams ("Williams"), received pursuant to a settlement in Williams's personal injury case. Of the settlement funds, $1,250.50 was to be paid to Williams's three medical providers, and $2,900 comprised Mungin's attorney's fees. From July 23, 2009, through July 29, 2009, Mungin transferred $3,850 from his attorney trust account to his operating account.

On July 29, 2009, Mungin issued to Williams a check in the amount of $4,549.50, drawn on his attorney trust account. On the same day, Mungin issued checks to two of Williams's medical providers on Williams's behalf in the amounts of $100.50 and $150. On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92, and the third medical provider had an outstanding lien in the amount of $1,000. From July 21, 2009, until February 16, 2010, Mungin was required to continuously maintain $1,000 in trust for payment to the third medical provider; Mungin failed to do so. On February 16, 2010, Mungin issued a check to the third medical provider on Williams's behalf in the amount of $1,000. The issuance of the check to the third medical provider invaded trust monies held for other clients and/or third parties.

*Jonathan Roberts Matter*

On August 7, 2009, Mungin deposited into his attorney trust account a check in the amount of $8,500 on behalf of his client, Jonathan Roberts ("Roberts"), received pursuant to a settlement in Roberts's personal injury case. Of the settlement funds, $3,719.20 was to be paid to Roberts's medical providers, and $2,300 comprised

Mungin's attorney's fees. Specifically, $1,719.20 was to be paid to Physiotherapy Associates ("Physiotherapy"), and $2,000 was to be paid to Bezak Chiropractic and Rehabilitation ("Bezak"). From August 7, 2009, through August 13, 2009, Mungin transferred $4,000 from his attorney trust account to his operating account. After receiving the settlement funds, Mungin received telephone calls from Physiotherapy and Bezak, which requested payment of their outstanding liens. Mungin failed to satisfy the liens at that time, and instead transferred funds that should have been used to satisfy the liens from his attorney trust account to his operating account.

On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92. On May 20, 2010, for the first time, Mungin disbursed settlement funds in the Roberts matter, when he issued to Roberts a check in the amount of $2,480, drawn on his attorney trust account. In September 2012, over three years after receiving the settlement funds, Mungin satisfied the medical liens owed to Physiotherapy and Bezak on Roberts's behalf. Specifically, on September 28, 2012, Mungin issued checks to Physiotherapy and Bezak on Roberts's behalf, drawn on his operating account because the funds had not been maintained in his attorney trust account.

*Tekema Baker Matter*

On or about October 29, 2009, Mungin deposited into his attorney trust account a check in the amount of $4,000 on behalf of his client, Tekema Baker ("Baker"), received pursuant to a settlement in Baker's personal injury case. Of the settlement funds, $1,000 was to be paid to Rising Health Chiropractors ("Rising Health"), Baker's medical provider, and $1,333.33 comprised Mungin's attorney's fees. On October 30, 2009,

Mungin transferred $2,600 from his attorney trust account to his operating account. On November 6, 2009, Mungin issued to Baker a check in the amount of $1,556.67, drawn on Mungin's attorney trust account. On the same day, Baker and Mungin signed Baker's settlement report, which stated: "I hereby approve the entire settlement and distribution made herein and assume full responsibility for all bills incurred by me in connection with this accident not listed above[.]" (Capitalization omitted).

In December 2009, there were several dates on which Mungin failed to maintain $1,000 in his attorney trust account for the outstanding balance owed to Rising Health. On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92. Mungin's attorney trust account balance remained below $1,000 until December 15, 2009, when other client funds replenished Mungin's attorney trust account. On December 24, 2009, on Baker's behalf, Mungin finally issued to Rising Health a check in the amount of $1,000.

*Michael Jenkins Matter*

On November 24, 2009, Mungin deposited into his attorney trust account a check in the amount of $4,200 on behalf of his client, Michael Jenkins ("Jenkins"), received pursuant to a settlement in Jenkins's personal injury case. Of the settlement funds, $1,830 was to be paid to Rising Health, Jenkins's medical provider, and $1,300 comprised Mungin's attorney's fees. Between November 24, 2009, and December 9, 2009, Mungin transferred funds from his attorney trust account to his operating account. On December 9, 2009, after receiving a reduction from Rising Health (from $1,830 to $1,500), Mungin issued to Jenkins a check in the amount of $1,500, drawn on Mungin's

attorney trust account.

On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92. As of March 19, 2010, Mungin's attorney trust account balance was $283.10. At various times since receiving the settlement funds on November 24, 2009, Mungin was out of trust in the Jenkins matter in the amount of $1,500. On April 13, 2010, on Jenkins's behalf, Mungin finally issued to Rising Health a check in the amount of $1,500, using other client funds deposited into the attorney trust account after March 19, 2010.

*Robin Whitehurst Matter*

On February 2, 2010, Mungin deposited into his attorney trust account a check in the amount of $7,000 on behalf of his client, Robin Whitehurst ("Whitehurst"), received pursuant to a settlement in Whitehurst's personal injury case. Of the settlement funds, $1,000 was to be paid to Optimum Care Center, Whitehurst's medical provider, and $2,800 comprised Mungin's attorney's fees. From February 2, 2010, through March 12, 2010, Mungin transferred $19,600 from his attorney trust account into his operating account. On March 12, 2010, Mungin issued to Whitehurst a check in the amount of $3,050, drawn on his attorney trust account.

From February 2, 2010, until June 4, 2010, Mungin was required to continuously maintain $1,000 in trust for the Whitehurst matter for payment to Optimum Care Center; Mungin failed to do so. As of March 19, 2010, Mungin's attorney trust account balance was $283.10. On April 22, 2010, Mungin's attorney trust account balance fell to $6.77. On June 4, 2010, on Whitehurst's behalf, Mungin finally issued to Optimum Care Center a check in the amount of $1,000. The check's issuance invaded funds deposited after

- 9 -

receipt of the settlement funds in the Whitehurst matter.

*Troy James Matter*

On May 14, 2010, Mungin deposited into his attorney trust account a check in the amount of $14,000 on behalf of his client, Troy James ("James"), received pursuant to a settlement in James's personal injury case. Of the settlement funds, $2,501.80 was to be paid to Optimum Care, James's medical provider, and $4,666.66 comprised Mungin's attorney's fees. From May 17, 2010, until May 21, 2020, Mungin transferred $6,400 in attorney's fees from his attorney trust account to his operating account. On May 18, 2010, Mungin received confirmation from Optimum Care that the total outstanding balance owed by James would be reduced from $2,501.80 to $2,000. On May 19, 2010, Mungin issued to James a check in the amount of $6,431.54, drawn on Mungin's attorney trust account. On May 26, 2010, Mungin issued to James a second check in the amount of $500, drawn on his attorney trust account.

From May 28, 2010, through June 2, 2010, Mungin's attorney trust account balance was $18.98. During that time period, Mungin failed to maintain $2,000 in his attorney trust account for the outstanding balance owed to Optimum Care. On June 4, 2010, using other client funds deposited into his attorney trust account, on James's behalf, Mungin issued to Optimum Care a check in the amount of $2,000.

*LaToya Evans Matter*

On August 2, 2010, Mungin deposited into his attorney trust account a check in the amount of $4,750 and on August 3, 2010, Mungin deposited into his attorney trust account a check in the amount of $4,750; both checks were deposited on behalf of his

client, LaToya Evans ("Evans"), received pursuant to a settlement in Evans's personal injury case. Of the settlement funds (totaling $9,500), $3,200 was to be paid to Align Spine Health Center ("Align Spine"), Evans's medical provider, and $3,000 comprised Mungin's attorney's fees. Between August 4, 2010, and August 14, 2010, Mungin transferred $6,350 from his attorney trust account to his operating account.

On August 30, 2010, Mungin issued a check to Evans in the amount of $3,500, drawn on Mungin's attorney trust account. Mungin should have maintained an additional $3,200 in his attorney trust account for the outstanding balance owed to Align Spine. As of September 2, 2010, however, Mungin's attorney trust account balance was $250.78. Thus, Mungin failed to continuously maintain $3,200 in trust for Align Spine. As of September 7, 2010, other client funds had replenished Mungin's attorney trust account. On September 7, 2010, Mungin issued to Align Spine on Evans's behalf a check in the amount of $3,200. The check's issuance invaded trust monies held for other clients and/or third parties.

*Hearing Judge's Other Findings*

Starting in late 2008, Mungin began experiencing a series of personal difficulties that impacted his ability to maintain the business portion of his solo practice. During that time period, Mungin reconciled his attorney trust account once a month, at best. In Fall 2008, Mungin's wife was arrested for drunk driving following a single-car accident. It was discovered that Mungin's wife suffered from alcoholism and would need to undergo treatment. This caused a strain on the marriage and eventually led to Mungin's and his

- 11 -

wife's divorce in 2011. And, starting in 2009, Mungin's son[4] began exhibiting symptoms of serious substance abuse, eventually leading to his son's placement into rehabilitation facilities. As a result of these difficulties, at the end of 2008, on numerous occasions, Mungin visited a psychologist.

Mungin did not deny that he mishandled his attorney trust account with respect to nine separate client matters. Mungin has since hired an accounting firm to help keep track of his books and reconcile his accounts. Mungin reconciles his attorney trust account weekly, and has not had any problems with his attorney trust account since Bar Counsel filed the Petition for Disciplinary or Remedial Action.

Numerous character reference letters were submitted on Mungin's behalf, including letters from judges in Prince George's County and from practicing attorneys.[5] All of the letters' authors describe Mungin as trustworthy. The evidence was insufficient to support a finding that Mungin engaged in dishonesty, fraud, or deceit in handling his attorney trust account.

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews for clear error the hearing judge's findings of fact, and reviews without deference the hearing judge's conclusions of law. See Md. R. 16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."); Md. R. 16-759(b)(2)(B) ("The Court shall give

_____

[4]At the hearing, Mungin testified that, in 2009, his son was a junior in high school.
[5]At the time the letters were admitted into evidence, Mungin's counsel stated that the letters from the judges in Prince George's County were obtained pursuant to subpoena.

due regard to the opportunity of the hearing judge to assess the credibility of witnesses.");

see also Attorney Grievance Comm'n v. Fader, 431 Md. 395, 426, 66 A.3d 18, 36 (2013).

As to exceptions, in Attorney Grievance Comm'n v. Bocchino, 435 Md. 505, 529, 80 A.3d 222, 235 (2013), we recently reiterated:

> When a party files exceptions to the hearing judge's findings of fact, those exceptions will be overruled so long as the findings are not clearly erroneous. When a party takes exception to the hearing judge's conclusions of law, those exceptions will be overruled so long as the conclusions are supported by the facts found.

(Citations omitted).

## DISCUSSION

### A. Findings of Fact

Mungin does not except to any of the hearing judge's findings of fact. The Commission excepts to the hearing judge's finding that Mungin visited a psychologist on numerous occasions at the end of 2008. We sustain the exception. The record demonstrates that, despite Mungin's testimony that he visited a psychologist, in actuality, from September 2008 through December 2008, Mungin visited Fritz Gollery, a Licensed Clinical Professional Counselor, at Christian Counseling Associates, Inc.[6] Thus, the hearing judge's finding that Mungin visited a psychologist was clearly erroneous, as Mungin actually visited a Licensed Clinical Professional Counselor.

---

[6]Specifically, in a letter dated July 3, 2013, from Kenneth O. Williams, the Executive Director of Christian Counseling Associates, Inc., to Mungin, Williams provided Mungin a list of dates on which Mungin was "seen by Fritz Gollery, LCPC[.]" "LCPC" is the acronym for the professional title "Licensed Clinical Professional Counselor."

- 13 -

## B. Conclusions of Law

Mungin does not except to any of the hearing judge's conclusions of law. The Commission excepts to the hearing judge's conclusion that Mungin did not violate MLRPC 8.4(c). For the below reasons, we overrule the exception and uphold all of the hearing judge's conclusions of law.

### MLRPC 1.1 (Competence)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. A lawyer's "failure to properly maintain [a client's] settlement monies in his [or her attorney trust] account demonstrates his [or her] incompetence pursuant to [MLRPC] 1.1." Attorney Grievance Comm'n v. James, 385 Md. 637, 662, 870 A.2d 229, 244 (2005) (citation and internal quotation marks omitted) (first alteration in original). A lawyer fails to properly maintain a client's settlement monies in an attorney trust account by having a negative attorney trust account balance and not maintaining sufficient funds in the attorney trust account for payment to clients. See id. at 662, 870 A.2d at 244.

Here, clear and convincing evidence supports the hearing judge's conclusion that Mungin violated MLRPC 1.1. Mungin failed to properly maintain clients' settlement monies in his attorney trust account. On two occasions, December 11, 2009, and March 21, 2011, Mungin's lack of attention to, and proper maintenance of, his attorney trust account resulted in a negative balance. Mungin also failed to promptly and accurately disburse settlement funds to third-party medical providers.

- 14 -

Specifically, on Coore's behalf, Mungin erroneously issued to Doctor's Community Hospital a check in the amount of $109.12, instead of $561.09, the amount owed. Mungin failed to pay the remaining balance, resulting in a lien owed to Doctor's Community Hospital. In addition, despite depositing settlement funds into his attorney trust account on May 11, 2009, Mungin did not issue checks to medical providers on Coore's behalf until July 14, 2009. In the Joyner matter, despite depositing settlement funds into his attorney trust account on June 29, 2009, Mungin did not issue checks to medical providers on Joyner's behalf until February 16, 2010. In the Williams matter, despite depositing settlement funds into his attorney trust account on July 21, 2009, Mungin did not issue a check to one of Williams's three medical providers on Williams's behalf until February 16, 2010. In the Roberts matter, despite depositing settlement funds into his attorney trust account on August 7, 2009, Mungin did not issue checks to Physiotherapy and Bezak on Roberts's behalf until September 28, 2012, over three years after receipt of the funds. In the Baker matter, despite depositing settlement funds into his attorney trust account on October 29, 2009, Mungin did not issue a check to Baker's medical provider on Baker's behalf until December 24, 2009. In the Jenkins matter, despite depositing settlement funds into his attorney trust account on November 24, 2009, Mungin did not issue a check to Jenkins's medical provider on Jenkins's behalf until April 13, 2010. In the Whitehurst matter, despite depositing settlement funds into his attorney trust account on February 2, 2010, Mungin did not issue a check to Whitehurst's medical provider on Whitehurst's behalf until June 4, 2010. In the James matter, despite depositing settlement funds into his attorney trust account on May 14, 2010, Mungin did

- 15 -

not issue a check to James's medical provider on James's behalf until June 4, 2010. And, in the Evans matter, despite depositing settlement funds into his attorney trust account on August 2, 2010, and August 3, 2010, Mungin did not issue a check to Evans's medical provider on Evans's behalf until September 7, 2010.

Finally, Mungin failed to maintain sufficient funds in his attorney trust account for payment to medical providers; *i.e.*, Mungin was out of trust in client matters. For example, in the Baker matter, in December 2009, there were several dates on which Mungin failed to maintain $1,000 in his attorney trust account for the outstanding balance owed to Rising Health. On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92. Mungin's attorney trust account balance remained below $1,000 until December 15, 2009, when other client funds replenished Mungin's attorney trust account. On December 24, 2009, on Baker's behalf, Mungin finally issued to Rising Health a check in the amount of $1,000.

### MLRPC 1.15(a) and 1.15(d) (Safekeeping Property)

MLRPC 1.15(a) provides:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

"MLRPC 1.15(a) requires an attorney to maintain client funds in a trust account, separate from the attorney's personal and operating funds. . . . [A lawyer]'s failure to maintain his

[or her] trust account separately from his [or her] personal funds [] violates MLRPC 1.15(a)." Attorney Grievance Comm'n v. Moeller, 427 Md. 66, 73, 46 A.3d 407, 411 (2012) (citations omitted).

> MLRPC 1.15(d) provides:
>
> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

A lawyer violates MLRPC 1.15(d) by "fail[ing] to promptly deliver settlement funds to [a] client and to medical providers[,]" and by failing to "pay a client's debt from settlement funds[.]" Attorney Grievance Comm'n v. Roberts, 394 Md. 137, 163-64, 904 A.2d 557, 573 (2006).

Here, clear and convincing evidence supports the hearing judge's conclusion that Mungin violated MLRPC 1.15(a) and 1.15(d). As to MLRPC 1.15(a), Mungin failed to hold property of clients or third parties in trust separate from his own property. Indeed, on several occasions, Mungin transferred funds from his attorney trust account to his operating account, even though the funds should have been held in trust for the third-party medical providers. For example, in the Williams matter, on July 21, 2009, Mungin deposited the settlement check received on Williams's behalf. Of the settlement funds received, $1,250.50 was to be paid to Williams's three medical providers and $2,900 comprised Mungin's attorney's fees. From July 23, 2009, through July 29, 2009, Mungin transferred $3,850 from his attorney trust account to his operating account. In other

- 17 -

words, Mungin transferred funds due and owing to Williams's medical providers to himself via his operating account instead of holding the funds in his attorney trust account for payment to Williams's medical providers.

As to MLRPC 1.15(d), Mungin failed to promptly deliver to clients and third-party medical providers settlement funds to which they were entitled. For example, in the Roberts matter, despite depositing settlement funds into his attorney trust account on August 7, 2009, Mungin did not disburse settlement funds to Roberts until May 20, 2010, almost ten months after the funds had been received, and he did not issue checks to Physiotherapy and Bezak on Roberts's behalf until September 28, 2012, more than three years after the funds had been deposited. In another example, in the Jenkins matter, despite depositing settlement funds into the attorney trust account on November 24, 2009, Mungin did not issue a check to Rising Health on Jenkins's behalf until April 13, 2010, almost five months after the funds had been received. In the Joyner matter, despite depositing settlement funds into his attorney trust account on June 29, 2009, Mungin did not issue checks to medical providers on Joyner's behalf until February 16, 2010, more than seven months after the funds had been deposited. In the Williams matter, despite depositing settlement funds into his attorney trust account on July 21, 2009, Mungin did not issue a check to one of Williams's three medical providers on Williams's behalf until February 16, 2010, nearly seven months after the funds had been deposited.

## MLRPC 8.4(b) (Criminal Act)

MLRPC 8.4(b) provides: "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Mungin had violated MLRPC 8.4(b). Nothing in the hearing judge's findings of fact indicates that Mungin committed a criminal act or engaged in criminal activity.[7]

## MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

MLRPC 8.4(c) provides: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" "It is well settled that this Court will not find a violation of M[L]RPC 8.4(c) when the attorney's misconduct is the product of 'negligent rather than intentional misconduct.'" Attorney Grievance Comm'n v. DiCicco, 369 Md. 662, 684, 802 A.2d 1014, 1026 (2002) (citations omitted). For example, in DiCicco, id. at 685, 802 A.2d at 1027, we overruled Bar Counsel's exception to the hearing judge's conclusion that the respondent had not violated MLRPC 8.4(c), explaining: "While the evidence presented supports [the hearing judge]'s finding of negligence or sloppiness, there is no clear and convincing evidence on this record to support a finding of dishonesty, fraud, deceit, or misrepresentation on [the r]espondent's part. We further note the lack of clear and convincing evidence of

---

[7]Because neither party excepts to the hearing judge's conclusion of law, we do not further address MLRPC 8.4(b).

misappropriation or actual financial loss to any of [the r]espondent's clients."

Here, the hearing judge concluded that Mungin had not violated MLRPC 8.4(c), reasoning as follows:

> There is no evidence in this case that supports a finding that [Mungin] engaged in any conduct involving dishonesty, fraud, deceit, or misrepresentation. It is this Court's finding that [Mungin] negligently mishandled his trust account on numerous occasions which led to the Rule violations enumerated above. The sole evidence that Bar Counsel presented to provide a violation of [MLRPC] 8.4(c) was the fact that [Mungin] had his clients sign statements of account which showed amounts due to healthcare providers which had not yet been paid. The uncontroverted testimony in this case was that [Mungin] never told his clients that those funds had already been paid at the time they signed the statements of account. Therefore, the Court does not find any evidence of dishonesty, fraud, deceit, or misrepresentation in the handling of those statements of account.

Bar Counsel contends that the hearing judge's findings establish that Mungin engaged in intentional misappropriation of funds in violation of MLRPC 8.4(c) by failing to pay third-party medical providers funds held in his attorney trust account and instead paying himself (by transferring those funds from his attorney trust account to his operating account), despite notice of the outstanding liens owed to medical providers.[8]

---

[8]At the hearing, during opening statement, Bar Counsel stated that Mungin violated MLRPC 8.4(c) "by creating settlement memoranda and having [his clients] sign that reflected that the third party lien holders had been paid when [Mungin] had not yet satisfied those liens at the time." Bar Counsel stated that Mungin violated MLRPC 8.4(b) by misappropriating funds in the Roberts matter, when he was put on notice that liens were outstanding to Bezak and Physiotherapy, but continued to transfer funds from his attorney trust account to his operating account instead of satisfying the liens. Later, during closing argument, Bar Counsel also contended that Mungin violated MLRPC 8.4(c) by knowingly transferring funds in the Roberts matter from his attorney trust account to his operating account despite knowledge of the outstanding liens due to Bezak and Physiotherapy.

Mungin responds that, before the hearing judge, Bar Counsel argued only that he violated MLRPC 8.4(c) by creating settlement reports, which reflected that the third-party medical providers had been paid when, in actuality, the liens owed to those medical providers had not been satisfied at the time the settlement reports were signed. Mungin contends that the argument now advanced by Bar Counsel was not made before the hearing judge and that, in any event, Bar Counsel failed to produce evidence that he engaged in intentional—as opposed to negligent—conduct.

We overrule Bar Counsel's exception and explain. At the hearing, during opening statement, Bar Counsel argued that Mungin violated MLRPC 8.4(c) "by creating settlement memoranda and having [his clients] sign that reflected that the third party lien holders had been paid when [Mungin] had not yet satisfied those liens at the time." During the hearing, Mungin testified that he never represented to clients that the settlement reports meant that the medical providers had already been paid.[9] To the extent that Bar Counsel argued that Mungin had violated MLRPC 8.4(c) based on dishonesty, fraud, deceit, or misrepresentation related to the settlement reports, on this record, we do not disturb the hearing judge's conclusion that the evidence did not demonstrate that Mungin had lied to or deceived his clients—or that he had misrepresented information to clients—concerning the settlement reports.

_____

[9]At one point during the hearing, Mungin testified that he did not indicate to clients whether their liens were paid at the time the clients signed the settlement reports, and explained: "When the client signs a settlement sheet, these are the proposed charges. Often I'm negotiating with the medical providers, but I try and show the client what the settlement looks like from the perspective of this is the amount of the check."

During closing argument, Bar Counsel contended that the errors with Mungin's attorney trust account were not "small errors just based on negligence[,]" and that Mungin had knowledge of outstanding liens owed to medical providers, but "intentionally did not pay the lien holders and, instead, [] transferred his fees from the trust account to the operating account." Bar Counsel specifically argued that Mungin violated MLRPC 8.4(c) by "fraudulently misappropriat[ing] funds intended for third parties for his personal benefit[.]" In arguing that Mungin's conduct was intentional, Bar Counsel identified only the bank records and settlement reports as evidence of Mungin's intent; *i.e.*, Bar Counsel offered no other evidence substantiating the argument that Mungin's actions were intentionally dishonest, fraudulent, or deceitful.[10] "[T]he number of times [an attorney trust] account was out of trust, standing alone, does not compel finding a violation of M[L]RPC 8.4(c) if other evidence supports a finding that the misconduct is the result of negligence, as opposed to fraud or dishonesty." DiCicco, 369 Md. at 682-83, 802 A.2d at 1025 (citations omitted). On this record, we decline to conclude that the hearing judge erred in concluding that clear and convincing evidence did not establish that Mungin had violated MLRPC 8.4(c).

Here, the hearing judge did not clearly err in finding that Mungin's mishandling of his attorney trust account was negligent rather than intentional. Mungin testified about

---

[10]We are aware of Bar Counsel's argument that Mungin knew not to transfer funds from his attorney trust account after receiving telephone calls from Physiotherapy and Bezak. At oral argument, however, Bar Counsel candidly acknowledged a dearth of information as to the timing of the telephone calls from Physiotherapy and Bezak in relation to Mungin's conduct. We are not persuaded to disturb the hearing judge's findings regarding Mungin's mental state.

the personal issues that he experienced beginning in 2008, and the hearing judge made findings of fact concerning those difficulties. Specifically, at the hearing, Mungin testified that the personal difficulties in his life occurred during the same period of time when he had issues with his attorney trust account. According to Mungin, he was "overwhelm[ed,]" but "did what [he] could to work professionally, but the business part of [his] practice was suffering." In addition, numerous character reference letters were submitted by judges and practicing attorneys on Mungin's behalf attesting to his trustworthiness. In light of Mungin's testimony and the character letters submitted on his behalf, absent additional evidence of intent, the hearing judge's finding that Mungin's misconduct was negligent rather than intentional was not clearly erroneous.

As to the transfer of funds from his attorney trust account to his operating account, the Joint Stipulation of Facts that the parties submitted to the hearing judge states that the transfers of funds from Mungin's attorney trust account to his operating account following disbursement of settlement funds involved transfer of attorney's fees arising from various client matters, not just in connection with the personal injury matter that had been settled. Thus, clear and convincing evidence does not establish that Mungin intentionally misappropriated funds in a particular client matter after receipt and deposit of the settlement funds by, for example, transferring all or more than his attorney's fees in that particular client matter. And, in the Roberts matter, as to the liens that were paid to Physiotherapy and Bezak years after settlement funds had been received, at the hearing, Mungin testified that, although he received telephone calls from the medical providers concerning the liens after the settlement funds were deposited into his attorney

- 23 -

trust account, it was not until Bar Counsel's audit in 2012 that he realized the medical providers had not been paid. Mungin testified that, once he realized the liens had not been paid, he paid them on Roberts's behalf. In other words, with his testimony, Mungin sought to establish that the non-payment of the two liens was due to an oversight, *i.e.*, negligence, not an intent to withhold or misappropriate the monies from the medical providers.

On this record, we will not disturb the hearing judge's conclusion that clear and convincing evidence did not establish that Mungin had violated MLRPC 8.4(c), and did not clearly err in finding that Mungin's misconduct was negligent rather than intentional. Cf. Attorney Grievance Comm'n v. Whitehead, 405 Md. 240, 248, 257, 950 A.2d 798, 803, 808 (2008) (A lawyer violated MLRPC 8.4(c) by misappropriating funds where he removed $600,000 of conservatorship assets without court approval and utilized the funds to purchase real property titled in his name and that of his business partner; such conduct was not attributable to negligence, but rather was an intentional misappropriation.); Attorney Grievance Comm'n v. Cherry-Mahoi, 388 Md. 124, 159, 155, 879 A.2d 58, 80, 77 (2005) (A lawyer violated MLRPC 8.4(c) by "willfully and knowingly misappropriat[ing] client funds that were to be held in trust" when she "withdrew nearly double the agreed upon fee that she was entitled to receive," used the funds for business and personal purposes, and used personal funds to pay the client's outstanding bills to

medical providers only after the client filed a complaint with Bar Counsel.).[11]

**MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]"  MLRPC 8.4(d).  "In general, a[ lawyer] violates [MLRPC] 8.4(d) when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession."  Attorney Grievance Comm'n v. Dore, 433 Md. 685, 696, 73 A.3d 161, 167 (2013) (citation and internal quotation marks omitted).  A lawyer's mishandling of his or her attorney trust account can also constitute

---

[11]We are aware that "[v]iolations of M[L]RPC 8.4(c) may occur . . . negligently." Attorney Grievance Comm'n v. Nwadike, 416 Md. 180, 193, 6 A.3d 287, 295 (2010), reconsideration denied (Nov 18, 2010) (citation and footnote omitted).  For example, in Attorney Grievance Commission v. Calhoun, 391 Md. 532, 570, 894 A.2d 518, 540 (2006), this Court held that a lawyer violated MLRPC 8.4(c) where the lawyer violated her representation agreement by failing to properly communicate with her client regarding legal fees and costs.  Although the lawyer did not make an affirmative misrepresentation, the lawyer "misle[]d [her client] by silence and lack of communication."  Id. at 548, 894 A.2d at 527.

Here, although the hearing judge found that Mungin's mishandling of his attorney trust account was negligent, the hearing judge did not find that Mungin engaged in any conduct—intentional or negligent—involving dishonesty, fraud, deceit, or misrepresentation; i.e., unlike in Calhoun, 391 Md. at 570, 894 A.2d at 540, there was no finding of intentional or negligent dishonesty, fraud, deceit, or misrepresentation. Significantly, before the hearing judge, Bar Counsel argued only that Mungin intentionally misrepresented facts on settlement memoranda and intentionally misappropriated funds.  In other words, Bar Counsel contended only that Mungin violated MLRPC 8.4(c) through intentional conduct, and never asserted that Mungin violated MLRPC 8.4(c) through negligent conduct.  Although Mungin's negligent mishandling of his attorney trust account certainly constitutes misconduct, based on the record in this case—i.e., Bar Counsel's not having argued that Mungin violated MLRPC 8.4(c) through negligent conduct, and the hearing judge's not having found that Mungin's negligent conduct involved dishonesty, fraud, deceit, or misrepresentation—we refrain from concluding that the hearing judge erred in determining that Mungin had not violated MLRPC 8.4(c).

conduct that is prejudicial to the administration of justice. See Attorney Grievance Comm'n v. Post, 350 Md. 85, 99, 710 A.2d 935, 942 (1998) ("[T]he manner in which the respondent handled his [attorney trust] account in this case is conduct prejudicial to the administration of justice.").

Here, clear and convincing evidence supports the hearing judge's conclusion that Mungin violated MLRPC 8.4(d). Mungin mishandled his attorney trust account with respect to nine separate client matters. Mungin was out of trust in each of the nine client matters, and failed to properly account for and disburse funds in a prompt fashion. Several disbursements to clients and third-party medical providers resulted in an invasion of trust monies held for other clients and/or third parties. And, medical providers did not receive prompt payment of liens as a result of Mungin's misconduct. Considered in its entirety, Mungin's misconduct in handling of his attorney trust account and clients' funds reflected negatively on the legal profession.

### MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another[.]" MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Mungin violated MLRPC 8.4(a). As discussed above, Mungin violated MLRPC 1.1, 1.15(a), 1.15(d), and 8.4(d).

**Maryland Rule 16-609 (Prohibited Transactions)**

Maryland Rule 16-609 provides:

a. Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

b. No cash disbursements. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

c. Negative balance prohibited. No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

Here, clear and convincing evidence supports the hearing judge's conclusion that Mungin violated Maryland Rule 16-609. As to Maryland Rule 16-609(a), Mungin used funds from his attorney trust account for unauthorized purposes. Mungin transferred funds from his attorney trust account to his operating account, despite that the funds should have been held in trust for third-party medical providers; *i.e.*, Mungin transferred funds due and owing to clients' medical providers to himself via his operating account instead of holding the funds in the attorney trust account for payment to the medical providers.

As to Maryland Rule 16-609(b), in May 2010, Mungin made three cash withdrawals from his attorney trust account totaling $500. Specifically, on May 7, 2010, Mungin withdrew $100 in cash from the attorney trust account; on May 10, 2010, Mungin withdrew $200 in cash from the attorney trust account; and on May 12, 2010,

Mungin withdrew $200 in cash from the attorney trust account. These cash withdrawals violated Maryland Rule 16-609(b)'s prohibition against cash withdrawals from attorney trust accounts.

Finally, as to Maryland Rule 16-609(c), on two occasions, Mungin's attorney trust account's balance was negative. On December 11, 2009, Mungin's attorney trust account balance fell to -$4.92. And, on March 22, 2011, Mungin presented a check in the amount of $2,000 for payment, drawn on his attorney trust account, even though there were insufficient funds in his attorney trust account. Presentment of the check caused an overdraft of his attorney trust account in the amount of $1,548.84. Thus, these two occasions show that Mungin violated Maryland Rule 16-609(c)'s prohibition against maintaining a negative balance in an attorney trust account.

## BOP § 10-306 (Trust Money Restrictions)

BOP § 10-306 provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Here, clear and convincing evidence supports the hearing judge's conclusion that Mungin violated BOP § 10-306. Mungin transferred from his attorney trust account to his operating account funds that should have been used to pay his clients' medical providers in nine separate client matters. In addition, on several occasions, Mungin's issuance of checks to medical providers on behalf of his clients resulted in the use of trust monies held for other clients and/or third parties.

## C. Sanction

Bar Counsel recommends that this Court disbar Mungin. At oral argument, Bar Counsel conceded that, if we overrule the exception to the hearing judge's conclusion that Mungin had not violated MLRPC 8.4(c), then this Court should indefinitely suspend Mungin. In his filing, Mungin recommended that he be indefinitely suspended "with the right to []apply [for reinstatement] in a reasonable time[.]" At oral argument, Mungin's counsel recommended that Mungin be indefinitely suspended with the right to apply for reinstatement after six months.

> In Dore, 433 Md. at 717, 73 A.3d at 180, we stated:
>
> When we impose sanctions, our goal is not to punish the [lawyer], but rather to protect the public and the public's confidence in the legal profession [and] to deter other lawyers from violating the [MLRPC]. To achieve this goal, the sanction should be commensurate with the nature and the gravity of the misconduct and the intent with which it was committed. In determining an appropriate sanction, we often refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions*, which focus on the nature of the ethical duty violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating or mitigating [factor]s.

(Second alteration in original) (citations and internal quotation marks omitted).

Here, as to the nature of the ethical duty violated, Mungin violated MLRPC 1.1, 1.15(a), 1.15(d), and 8.4(d), Maryland Rule 16-609(a)-(c), and BOP § 10-306 by mishandling his attorney trust account in connection with nine separate client matters; by withdrawing cash from his attorney trust account on three separate occasions; and by failing to properly account for and disburse settlements funds in a prompt fashion. As to Mungin's state of mind, we let stand the hearing judge's finding that Mungin was

negligent in handling and maintaining his attorney trust account. As to the actual or potential injury that Mungin's misconduct caused, Mungin's misconduct negatively impacted the public's perception of the legal profession and caused payments to medical providers to be delayed by months and, in the case of the Roberts matter, years.

In Attorney Grievance Comm'n v. Davy, 435 Md. 674, 710, 80 A.3d 322, 342-43 (2013), we stated:

> Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the [attorney] disciplinary proceeding[] by intentionally failing to comply with rules or orders of the [Commission]; (f) submission of false evidence, false statements, or other deceptive practices during the [attorney] disciplinary proce[eding]; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of the victim; (i) substantial experience in the practice of law; [and] (j) indifference to making restitution.

(Some alterations in original) (citation and paragraph breaks omitted).

Here, we note that the hearing judge did not find any aggravating factors. Upon our independent review, the only aggravating factors that we discern are that Mungin engaged in a pattern of misconduct related to nine separate client matters and committed multiple offenses by violating several MLRPC, Maryland Rule 16-609(a)-(c), and BOP § 10-306.

> The following constitute mitigating factors:
>
> (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith efforts to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to [the Commission] or cooperative attitude toward [the attorney discipline] proceeding[]; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is

medical evidence that the [lawyer] is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the [lawyer]'s recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in [the attorney] disciplinary proceeding[]; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses.

Davy, 435 Md. at 712-13, 80 A.3d at 344 (some alterations in original) (citation and paragraph breaks omitted).

Here, although the hearing judge did not label her findings as mitigation, the hearing judge detailed facts concerning Mungin's personal difficulties beginning in 2008, Mungin's trustworthy character as supported by character reference letters, and Mungin's lack of dishonesty, fraud, or deceit.  Upon our independent review, we determine that the record establishes the following mitigating factors: absence of a prior disciplinary record, personal problems, and character.

In DiCicco, 369 Md. at 688, 686, 666, 802 Md. at 1028, 1027, 1016, even though the Commission recommended disbarment, this Court indefinitely suspended from the practice of law with the right to apply for reinstatement after ninety days a lawyer who violated MLRPC 1.15(a), 1.15(c), and 8.4(a), and Maryland Rules 16-607(a) and 16-609. In DiCicco, id. at 675-76, 802 A.2d at 1021-22, the lawyer mishandled his attorney trust account and used the account as it if were "his personal bank account."  The hearing judge found that there were numerous instances of attorney trust account misconduct involving different clients, including unexplained low and negative balances, and disbursement checks that "appeared to be unrelated to any" client matters.  Id. at 670-71,

802 A.2d at 1018-19.  Nonetheless, the hearing judge determined, and the evidence demonstrated, that the lawyer's misconduct was due to "negligence or sloppiness[.]"  Id. at 685, 802 A.2d at 1027.  In determining the appropriate sanction, we stated that "[w]here there is no finding of intentional misappropriation, [] and where the misconduct did not result in financial loss to any of the respondent's clients, an indefinite suspension ordinarily is the appropriate sanction."  Id. at 687, 802 A.2d at 1028 (citation omitted).  Indeed, we recognized that "[a]lthough ignorance does not excuse a violation of [the MLRPC], a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction."  Id. at 687, 802 A.2d at 1028 (citations omitted).  In concluding that the lawyer's misconduct warranted an indefinite suspension, we considered several mitigating factors, including the absence of fraudulent intent, the lack of evidence that any client suffered a financial loss due to the lawyer's misconduct, and the lack of a prior disciplinary record.  Id. at 688, 802 A.2d at 1028.

In Attorney Grievance Comm'n v. Sperling, 380 Md. 180, 193, 183-84, 844 A.2d 397, 405, 399 (2004), this Court indefinitely suspended from the practice of law with the right to apply for reinstatement after ninety days a lawyer who violated MLRPC 1.15 and 8.4(a), and BOP § 10-306 where the lawyer's attorney trust account had a large shortfall for which the lawyer could not account.  We stated that the lawyer committed "quite serious" violations by having a large shortfall in his attorney trust account, which "place[d] clients and others whose funds [were] being held at some considerable risk."  Id. at 192, 844 A.2d at 404-05.  Nonetheless, we observed that "no one suffered as a result of the shortfall and the findings of fact and conclusions of law of the hearing

[judge], particularly as they relate to the cause of the violations and the intent with which they were committed, [were] most favorable to the respondent." Id. at 192, 844 A.2d at 405. Cf. Attorney Grievance Comm'n v. Obi, 393 Md. 643, 660, 656, 648, 904 A.2d 422, 432, 429-30, 424 (2006) (This Court suspended from the practice of law for thirty days a lawyer who violated MLRPC 1.15(a) and 8.1(b), and Maryland Rules 16-607 and 16-609, where the lawyer, among other things, withdrew $20,000 in cash from his attorney trust account; we observed that "an attorney may not avoid responsibility for misuse of his or her trust account, even if such misuse was inadvertent." (Citations and internal quotation marks omitted)).

Here, Mungin's mishandling of his attorney trust account in connection with nine separate client matters over a sustained period of time, as well as his withdrawal of cash from the attorney trust account, are serious matters. Mungin's misconduct, however, was determined to be due to negligence; *i.e.*, Mungin's misconduct did not result in a finding of intentional dishonesty, fraud, or deceit. Mungin's character for trustworthiness was attested to in numerous character letters submitted on Mungin's behalf from judges and practicing lawyers. In addition, Mungin's misconduct occurred during a period of personal difficulties in his life involving his wife and teenaged son. The hearing judge found that Mungin's personal life has stabilized, and Mungin has taken steps to ensure that his attorney trust account is properly maintained, including reconciling his account on a weekly basis and hiring an accounting firm to assist with bookkeeping and reconciliation. Considering these circumstances, and determining that Mungin's misconduct merits a sanction that is greater than the indefinite suspension with the right

to apply for reinstatement after ninety days in <u>DiCicco</u> and <u>Sperling</u>, we conclude that the appropriate sanction for Mungin's violations of MLRPC 1.1, 1.15(a), 1.15(d), 8.4(d), and 8.4(a), Maryland Rule 16-609(a)-(c), and BOP § 10-306 is an indefinite suspension from the practice of law in Maryland with the right to apply for reinstatement after six months. The suspension shall begin thirty days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(B), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VAUGHN MILES MUNGIN.**

Circuit Court for Prince George's County
Case No. CAE13-03396

Argued: June 4, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 88

September Term, 2012
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

VAUGHN MILES MUNGIN
_____

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.
_____

Concurring Opinion by Harrell, J.,
which Battaglia, J., joins.
_____

Filed: July 18, 2014

I join reluctantly the Court's opinion. Although I can find no fault with the opinion, I write separately to note that, on this record, although no MLRPC 8.4(c) violations were proved, I am left to wonder whether such a violation occurred. Under the circumstances, to doubt is to affirm the hearing judge. Nonetheless, I wish to highlight the basis of my mixed emotions for consideration in the prosecution of future cases.

At oral argument, we posed to Bar Counsel and Mungin's Counsel several questions regarding the three cash withdrawals Mungin made from his trust account within a six-day span in May 2010. Although the lawyers were in agreement that those three cash withdrawals violated Maryland Rule 16-609(b), they offered very little explanation for why the withdrawals were made or the documentary vehicle(s) by which they were accomplished. Mungin's Counsel supposed that the record might reflect that the cash withdrawals were made by Mungin in the belief that they represented earned fees. If so, the fees would have been associated necessarily with specific client matters. When pressed, however, Mungin's Counsel could not recollect whether the record identified the particular client matters for which Mungin may have believed that he earned such fees; nor could he explain whether the timing of Mungin's work on any client's behalf coincided with the "taking" of such fees, in the form of cash, from trust monies. Similar questioning of Bar Counsel about the record shed no additional light on these matters.

Upon my post-argument review of the record, it turns out that the state of counsels' recollection at argument could be explained by a dearth of evidence regarding the cash withdrawals. I located only two pieces of evidence regarding the cash

withdrawals: (1) a transactional summary of Mungin's trust account showing, among all of his other transactions, that he made cash withdrawals of $100.00, $200.00, and $200.00 on 7, 10, and 12 May 2010, respectively; and, (2) an entry in the parties' Joint Stipulations before the hearing judge stating that "[i]n May 2010, [Mungin] made three (3) cash withdrawals from his trust account totaling $500.00." Although Mungin testified at the hearing in the Circuit Court, and in a pre-trial deposition (the transcript of which was offered into evidence at the hearing), not a snippet of his direct or cross-examination testimony in either circumstance touched on the three cash withdrawals. Furthermore, no withdrawal slip, check, or other demonstrative record of the modality by which either cash withdrawal transaction was accomplished could be found in the evidence.

In my view, the cash withdrawals are highly suggestive of intentional misappropriations of trust funds. Intentional misappropriations violate MLRPC 8.4(c). *See Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 257, 950 A.2d 798, 808 (2008) (collecting cases). Such misappropriations are "'act[s] infected with deceit and dishonesty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction.'" *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 490, 671 A.2d 463, 483 (1996) (quoting *Attorney Grievance Comm'n v. Ezrin*, 312 Md. 603, 608-09, 541 A.2d 966, 969 (1973)). I do not contend that every Rule 16-609(b) violation constitutes an intentional misappropriation of trust monies. There must still be some evidence (direct or circumstantial) from which at least an inference may be drawn reasonably that MLRPC 8.4(c) was violated also. Had there been some evidence to show that the cash withdrawals constituted intentional misappropriations, I would have

agreed with Bar Counsel that, despite Mungin's personal problems occurring at the time of the cash withdrawals, disbarment would be the appropriate sanction. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 415, 773 A.2d 463, 486 (2001).

Bar Counsel did not argue, however, that the cash withdrawals constituted MLRPC 8.4(c) violations.[1] Rather, Bar Counsel argued that the alleged MLRPC 8.4(c) violations occurred when Mungin executed settlement agreements with certain clients that contained inaccurate lien information. *See* Maj. slip op. at 20-22. As a result, we are left to swallow the hearing judge's Findings of Fact and Conclusions of Law that inferentially the cash withdrawals were just another result of the pervasive negligent conduct of Mungin in this case. Thus, I am constrained to concur in the Court's opinion that Bar Counsel failed to prove the alleged MLRPC 8.4(c) violations, as the hearing judge concluded.

Judge Battaglia authorizes me to state that she joins the views expressed in this concurring opinion.

---

[1] This is understandable, with the benefit of hindsight, because the record was undeveloped on the underlying circumstances of the cash withdrawals.